IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS CREED,<br>On Behalf of Himself and All Others<br>Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BENCO DENTAL SUPPLY CO.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: 3:12-CV-01571<br>: (JUDGE MARIANI)<br>:<br>:<br>: |

## MEMORANDUM OPINION

### I. Procedural History

Presently before the Court is a Sealed Motion for Settlement Approval (Doc. 81). In this class action lawsuit, the Named Plaintiff, on behalf of a class that currently consists of 67 service technicians and others similarly situated who worked at Benco Dental Supply Company within the past three years, filed suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). (See Mem. in Supp. of the Parties' Confidential Mot. for Settlement Approval, Doc. 82, at 1-2.) Plaintiff's Complaint alleged that the technicians were denied overtime pay under their employment agreements in violation of the FLSA. (Compl., Doc. 1, at ¶¶ 39-48.) Following class certification, the parties settled for a fund of $1 million, of which $333,333.00 is allocated to payment of attorneys' fees, $17,451.50 for payment of attorneys' other expenses, $30,019 is used to

administer the settlement, and $15,000 goes to the Named Plaintiff as an incentive award. (*See* Mem. in Supp. of the Parties' Confidential Mot. for Settlement Approval, Ex. 1, Settlement Agreement, at 5, 7, 9 (hereinafter "Settlement Agreement").) As stated by class counsel, the settlement fund will result in a gross average recovery of approximately $2,500 per class member, which will amount to approximately $1,600 after deducting fees and expenses. (Unofficial Tr., Sept. 5, 2013, 4:13-15.) Only those service technicians who affirmatively opt in to the lawsuit will be bound by the settlement; all others retain full rights to bring their own claims later. (*See* Settlement Agreement at 11.) Any portion of the settlement fund that is left over after all class compensation, fees, and expenses have been paid will revert back to Benco. (*Id.*)

For the reasons discussed below, the Court finds that the settlement is a fair and reasonable resolution of a bona fide dispute between the parties. Therefore, the Court will approve the settlement in its totality.

## II. Approval of Settlement in General

> When employees bring a private action under the FLSA, and present to the district court a proposed settlement pursuant to that Act's § 216(b), the district court may enter a stipulated judgment if it determines that the compromise reached is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."

*Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *2 (D. N.J. 2012) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). District

courts in the Third Circuit typically look to the considerations set forth in *Lynn's Food* when deciding whether to approve a FLSA settlement. *Altenbach v. Lube Center, Inc.*, 2013 WL 74251, at *1 (M.D. Pa. 2013).

### a. Bona Fide Dispute

A dispute is "bona fide" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.*, 2007 WL 1300733, at *3 (E.D. Pa. 2007) (quoting *Morris v. Penn Mut. Life Ins. Co.*, 1989 WL 14063, at *4 (E.D. Pa. 1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching," *Brumley*, 2012 WL 1019337, at *2 (quoting *Lynn's Food*, 679 F.2d at 1354).

The dispute at issue here is clearly bona fide. Only after extensive and contested motion practice, (*see* Docs. 21-22, 26-29, 32, 34-37, 39), was this class conditionally certified, (*see* Doc. 46 (certification order).) The disputes at issue are factual, not legal, ones. They include issues such as the composition and definition of the class and whether Benco in fact paid overtime compensation in compliance with the FLSA. Settlement was only reached after approximately ten months of litigation, in which both parties were zealously represented. Therefore, and in the absence of any evidence to the contrary, the Court concludes that the settlement does indeed reflect a compromise

3

of bona fide disputed issues which, as discussed below, is fair and reasonable to both parties.

### b. Fair and Reasonable Resolution

> [I]n assessing the fairness and reasonableness of an agreement settling a FLSA collective action, . . . district courts in this circuit have applied the factors set forth in *Girsh v. Jepson*, 521 F.[2]d 15[3] (3d Cir. 1975), for approving class action settlements under Rule 23 of the Federal Rules of Civil Procedure.

*Altenbach*, 2013 WL 74251, at *2.

The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. As the Court will now discuss, all of the applicable *Girsh* factors weigh in favor of settlement approval.

### 1. Complexity, Expense, and Likely Duration of Litigation

The litigation in this case would be very complex. The case involves "Belo agreements," a little-used type of employment contract wherein the Benco service technicians would agree to a flat amount of pay, regardless of the number of hours

4

worked, for all work up to sixty hours per week. (*See* Unofficial Tr. at 5:7-11.) Because Belo agreements are rarely used, the central issue in this case—whether the agreements were correctly administered to provide for proper overtime pay—would be difficult to address and would require a significant amount of motion practice, extensive discovery, and would ultimately culminate in a jury trial. Of course, these undertakings would be both expensive and time-consuming. Even after ten months of litigation, this case only settled at the class certification stage. On a time schedule like that, it is not at all unreasonable to assume that any trial would wait years to commence.

### 2. Reaction of the Class to Settlement

Thus far, 67 members of the class have opted into the class and none of them have objected to the settlement. (*See* Mem. in Supp. of the Parties' Confidential Mot. for Settlement Approval at 2, 6.)

Moreover, the notice to class members contains representations that class members will not be retaliated against for opting in to the settlement. (*See* Joint Submission of Revised Class Member Notice of Parties' FLSA Settlement Filed Under Seal, Ex. 1, Doc. 87-1, at 2.) The parties have also amended their settlement agreement to explicitly guarantee that Benco will not retaliate against class members. (*See* Doc. 92 (addendum to class action settlement).) Class Counsel Rowdy Meeks believes that this protection from retaliation will drive up participation in the class. (*See* Unofficial Tr. at

5

7:5-9.) Previously, he had gotten "calls from a lot of these service techs that were concerned about opting in because they thought it might be a black mark against them." (*Id.* at 7:1-3.) Now that this obstacle has been removed, it is reasonable to believe that previously hesitant class members will opt in, thereby demonstrating their satisfaction with the settlement. And, as previously noted, those who do not opt in will not be bound by the settlement. (*See* Settlement Agreement at 11.) Accordingly, this factor weighs in favor of settlement approval.

### 3. Stage of the Proceedings and Amount of Discovery Completed

As discussed above, this case has proceeded through extensive motion practice, as well as a full day of mediation. The Court has also ordered Benco to turn over a great amount of information to the Plaintiffs for purposes of class identification. (*See* Doc. 40.) Accordingly, both parties have had more than adequate opportunity to understand the strengths and weaknesses of their cases and come to an informed resolution. Therefore, this factor also weighs in favor of settlement approval.

### 4. Risks of Establishing Liability

As discussed above, Belo agreements are both complicated and little-used. Because they are so little-used, the case law on them is sparse, and is therefore unclear as to Benco's liability. By having to litigate in a legal grey area, Plaintiffs would incur substantial risks, both in a jury trial and on appeal, of an unfavorable outcome.

### 5. Risks of Establishing Damages

For the same reasons, in the absence of settlement, Plaintiffs run a great risk of not being able to establish and collect damages. Given that liability is hard to prove, it follows that damages, which can only be assessed after establishing liability, will pose proof problems of its own.

### 6. Risk of Maintaining Class Status Through Trial

"There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998). Such is certainly true here: the *Benco* case has no greater or lesser risk of decertification than any other class action. Nonetheless, because decertification is always possible, this factor weighs slightly in favor of settlement.

### 7. Defendant's Ability to Withstand a Greater Judgment

Even if found liable, Benco would only be obligated to compensate its employees for the amount of overtime pay that it owes based on the hours they actually worked. This creates a legal cap on liability. Counsel have represented to the Court that the settlement comes to close to the full extent of Benco's legal liability. (*See* Unofficial Tr. at 10:5-7, 21-25.) Therefore, this factor does not apply: even if Benco could afford to pay more, it could have no legal obligation to do so.

### 8. Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery

When discussing the best possible recovery, counsel for the Plaintiffs described the settlement as "70, 75 percent of our best case scenario." (*Id.* at 10:5-7.) Counsel for the Defendant agreed with this statement, and with the Court's characterization of the settlement as being "on the high side of full liability." (*Id.* at 10:11-25.) Settling for close to the amount of full liability represents a respectable victory for the class members and therefore favors approval of settlement. Moreover, because the settlement is not binding on members of the class who have not opted in, other members who believe that a better recovery is possible remain free to pursue a claim on their own.

### 9. Range of Reasonableness of Settlement Fund in Light of All Attendant Risks of Litigation

This final factor weighs in favor of approval for all the reasons discussed above. Plaintiffs brought a claim in a complex and little-litigated area of the law, where prospects of victory at a jury trial and on appeal remained unclear, and still managed to settle at an amount close to the limits of Defendant's liability. Given the many risks of litigation—including all the imponderable twists and turns that might not become apparent until months or years into the case—this settlement represents a more than reasonable outcome for the Plaintiffs.

### c. Settlement Does Not "Impermissibly Frustrate" the Implementation of FLSA in the Workplace

Finally, having decided that the settlement is fair and reasonable, the Court must determine whether the settlement would "impermissibly frustrate[] the implementation of FLSA in the workplace." *Altenbach*, 2013 WL 74251, at *1.

Far from frustrating FLSA, the settlement actually furthers it. The parties represent that Benco no longer pays its employees based on the old Belo agreements, but instead pays them based on a standard hourly basis, where they are paid solely for hours worked and receive time-and-a-half pay for overtime work. (Unofficial Tr. at 5:7-16.) Though it is unclear exactly when the decision to switch to the new method took place—and whether the switch was entirely prompted by this lawsuit or just influenced by it, (*see id.* at 5:17-23)—the lawsuit has played at least some role in moving Benco employees into a more standard and legally clearer payment scheme. Such a result is consistent with the purpose of the FLSA, which is meant to protect workers from employment agreements that may not work out in their best interests but that, because of lack of bargaining power, they have no choice but to accept. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the

9

population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency . . . .").

## III. **Attorney's Fees**

One-third of the settlement (or $333,333.00) will go to the Class Counsel in attorney's fees. (Settlement Agreement at 7.) This "percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *Prudential*, 148 F.3d at 333).

The Third Circuit has held that "a district court should consider seven factors when analyzing a fee award in a common fund case." *Id.* at 301. These factors are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). "The factors listed above need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1. As discussed below, all factors weigh in favor of approval in the present case.

10

### 1. Size of the Fund and Number of Persons Benefitted

The settlement fund is $1 million. (Mem. in Supp. of the Parties' Confidential Mot. for Settlement Approval at 2.) Currently 67 people make up the class and 324 more are able to opt in. (*Id.* at 1.) Moreover, each class member's ultimate recovery is close to the upper limit that Benco was legally obligated to pay, which means that the settlement fund is a sufficient size to adequately compensate all class members who opt in to it.

But additionally, the settlement benefits even those class members who do not opt in to it. This lawsuit was a factor in pushing Benco to abandon its old Belo agreements and to compensate its employees on an hourly basis. (Unofficial Tr. at 5:7-23.) To the extent that Belo agreements—even if properly utilized—are complex and difficult to understand, this represents a victory for all of Benco's service technicians.

### 2. Absence of Substantial Objections by Members of the Class

The Court has already discussed the facts that (1) no class members have objected to any part of the settlement, which includes attorney's fees, and (2) class members who do not opt in will not be bound by the settlement, and therefore would not be prejudiced by the agreed-upon attorney's fees, even if they were to view them as excessive. Accordingly, this factor weighs in favor of approval.

### 3. Skill and Efficiency of the Attorneys Involved

Considering the potential for this case to turn into a multi-year litigation, class counsel has done a good job of negotiating a quick settlement that more than adequately compensates the class. This indicates that class counsel is in fact both skilled and efficient. He has navigated an unclear area of law to produce an award for the class that comes close to the full extent of Benco's liability and that led to the creation of better employment contracts for all of Benco's service technicians, whether they opt into the class or not. Accordingly, this factor weighs in favor of approval.

### 4. Complexity and Duration of the Litigation

As discussed above, this case involves a complicated area of law. Though the case settled after only ten months of litigation, it had the potential to go on for many years. Even the ten months that the case did last were hard fought, as evidenced by the extensive motion practice in the docket. Moreover, the risk that the case could last for many more years—and the risk that, even after all these years, it would not yield an outcome that makes counsel's efforts worthwhile—is a substantial one. It is, furthermore, a risk that class counsel assumed when he took this case and which he deserves compensation for assuming. Accordingly, this factor also weighs in favor of approval.

### 5. Risk of Nonpayment

Because this case involves an unclear and complex area of the law, the risk of nonpayment is relatively high. Class counsel represents that he undertook this case on a contingency-fee basis, (see Mem. in Supp. of the Parties' Confidential Mot. for Settlement Approval, Ex. 2, Decl. of Rowdy Meeks, Esq., ¶ 4 (hereinafter "Meeks Decl.")), meaning that if Plaintiffs received an unfavorable jury verdict or had a verdict overturned on appeal, counsel could have invested a significant amount of time and energy in the case for little or no reward. A fee of one-third of the settlement is appropriate to compensate counsel for risks he took to secure significant benefits for the class.

### 6. Amount of Time Devoted to the Case by Plaintiffs' Counsel

Class counsel represents that his office has spent 350.9 hours working on the case. (Id.) While this results in a high hourly rate of compensation, this factor does not militate against settlement given the risks that counsel incurred when accepting this case, as discussed above.

Moreover, simply judging the attorney's settlement award by the amount of hours that class counsel worked overlooks the fact that the class itself has an interest in speedy litigation. Even if settlement had been effected six months after the time at which it actually was effected, it is unlikely that the class members would have received

13

a greater recovery, whereas counsel's expenses and time expended would only have increased. This would allow a calculation producing a lower hourly rate for counsel, but it would not confer any additional benefit on the class. Counsel should therefore not be penalized for settling early—when the ratio of attorney's award to time spent is relatively high—if delaying settlement would lower his hourly rate but would not result in gains to the class that counsel serves.

### 7. Awards in Similar Cases

Finally, an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit. *See Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472, at *5 (M.D. Pa. 2008) (collecting cases). Therefore, this factor also weighs in favor of approval.

### 8. Lodestar Cross-Check

Even after analyzing the above factors, the Third Circuit suggests that "it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid*, 396 F.3d at 305 (citing *Prudential*, 148 F.3d at 333). "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Lead attorney for the class Rowdy Meeks testifies to a lodestar billing rate of $625.00 per hour for himself and $175.00 per hour for his paralegal.

14

(Meeks Decl. at ¶ 4.) Attorney Meeks worked 311.7 hours on this case and Paralegal Judy Hayman worked 39.2 hours. (Id.) This would amount to a total bill of $201,672.50, meaning that the settlement agreement gives counsel 1.65 times the lodestar amount.

However, given the nature, complexity, and potential duration of this case, the Court does not believe that a 1.65 multiplier is unreasonable. Nor does it believe that, under the facts of this case, $625 per hour for an attorney of Mr. Meeks's skill and experience or $175 per hour for a paralegal associated with him is an unreasonable lodestar, for the reasons discussed above. Therefore, the Court finds that the attorney's fees portion of the settlement agreement passes the lodestar cross-check.[1]

## IV. Incentive Payment to the Named Plaintiff

Finally, the Named Plaintiff, Douglas Creed, seeks an incentive payment of $15,000.

> Factors to consider when assessing incentive awards are: (a) the risk to the plaintiff in commencing suit, both financially and otherwise; (b) the notoriety and/or personal difficulties encountered by the representative plaintiff; (c) the extent of the plaintiff's personal involvement in the suit in terms of discovery responsibilities and/or testimony at depositions or trial; (d) the duration of the litigation; and (e) the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.

---

[1] The Court's approval of attorney's fees based on the unique facts of this case should not be understood as the expression of an opinion that a motion for attorney's fees premised on an hourly rate of $625 for an attorney or $175 for a paralegal, either by way of fee agreement or lodestar calculation, will always be deemed reasonable or will always be approved by this Court. In every case where the filing of a motion for attorney's fees is authorized, whether the case is brought on behalf of an individual or is one where class certification is granted, each such request for attorney's fees must be evaluated in light of the nature, complexity, and duration of the case and the time and effort expended by counsel in achieving a successful resolution, together with the Third Circuit's seven-factor test, laid out above.

15

*Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *6 (E.D. Pa. 2004) (citing *In re Plastic Tableware Antitrust Litig.*, 1995 WL 723175, at *2 (E.D. Pa. 1995)). This is not a formal test, but merely represents some of "the reasons courts cite for approving such awards." *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 121 (E.D. Pa. 1994).

Here, the Court does not know to what extent Mr. Creed was personally involved in the suit, aside from Attorney Meeks's vague statements that Creed did provide assistance. (*See* Mem. in Supp. of the Parties' Confidential Mot. for Settlement Approval at 15.) Nonetheless, Mr. Creed took on personal risk in bringing this case and deserves compensation for that. Even though Benco ultimately agreed not to retaliate against class members, Mr. Creed could not have been sure of that when he brought the case. As Attorney Meeks noted before the Court, the dental supply industry is dominated by only a few companies, so that there would exist the potential for Mr. Creed to be excluded from employment across the entire industry if the action did not go as he planned. (*See* Unofficial Tr. at 6:23-7:4.) Moreover, Mr. Creed took these risks for what would only be at most a couple thousand dollar recovery if he were to be treated the same as all the unnamed class members. Clearly, such would not be adequate compensation.

Accordingly, the Court shall approve the incentive payment to Douglas Creed.

## V. Conclusion

For the reasons discussed above, the Motion to Approve the Settlement (Doc. 81) is **GRANTED**. A separate Order follows.

_____
Robert D. Mariani
United States District Judge